CHATTANOOGA MEDICINE CO. *v.* THEDFORD *et al.*

(*Circuit Court, N. D. Georgia.* November 11, 1891.)

TRADE NAME—TRANSFER—CONSTRUCTION OF CONTRACT.

M. A. Thedford, owning a third interest in the right to make and sell a compound known as "Dr. A. Q. Simmons' Liver Medicine," formed a partnership with his two co-owners, and for a time they prosecuted the business under the name of "M. A. Thedford & Co." Thedford afterwards sold his interest in the right to his co-partners, and also conveyed to them all his right to "the firm name and style of M. A. Thedford & Co.," "for the purpose of manufacturing, advertising, and selling the 'Simmons Liver Medicine,'" provided, however, that in the use of the firm name he was not to be responsible, "it being simply to be used as a trade-mark of the business." *Held,* that the grantees had the exclusive right to use the firm name in connection with the "Simmons Liver Medicine" only, and not in connection with a medicine advertised as "M. A. Thedford & Co.'s Original and only Genuine Liver Medicine or Black Draught."

In Equity. Bill by the Chattanooga Medicine Company against M. A. Thedford and W. J. Satterfield for an injunction. Denied.

This is a bill in equity, brought by complainant against defendants to enjoin the latter from manufacturing, advertising, and selling the medicine known as "M. A. Thedford's Liver Invigorator." For a proper understanding of the issues to be determined by the court in its present decision, which is on the application for a temporary injunction, a brief statement of the facts may be necessary. About the year 1840, Dr. A. Q. Simmons, a resident of north Georgia, began the manufacture and sale of what has since been known as "Dr. A. Q. Simmons' Liver Medicine," "Dr. A. Q. Simmons' Vegetable Tonic," etc. Subsequently, and about the year 1856, Dr. Simmons transferred to his son-in-law, J. H. Thedford, the right to manufacture, advertise, and sell "Dr. A. Q. Simmons' Liver Medicines," by whom, in 1872, the same was transferred to his son, Miles A. Thedford, one of the defendants here. In the same year, Miles A. Thedford, who had formerly lived in north Georgia, went to Chattanooga, and formed a partnership with Nicklin & Rawlings, a firm of druggists in that city, for the purpose of manufacturing, advertising, and selling said medicines. A few years thereafter, Miles A. Thedford went to Louisville, Ky., where, in 1873, he formed a partnership with Edward Wilder and Robert L. Edgerton, under the firm name and style of Miles A. Thedford & Co., with the object of continuing to make, advertise, and sell said "Simmons Liver Medicines," using the same wrappers for their packages and bottles there that were used in Chattanooga, except as to color of paper, ink, and place of manufacture. After carrying on this business for a short time, Miles A. Thedford returned to Chattanooga, and on October 14, 1875, sold to William G. Smith and Charles McKnight a two-thirds interest in his right, title, and interest in the manufacturing, advertising, and selling "Dr. A. Q. Simmons' Liver Medicine," at the same time forming a partnership with the said Smith and McKnight, under the firm name of M . Thedford & Co. On November 26, 1876, Miles A. Thedford conveyed to Z. C. Patten his remaining one-third interest in the right to make, mix, manufacture, ad-

vertise, and sell said "Dr. A. Q. Simmons' Liver Medicine," at the time binding himself not to engage in the manufacture and sale of the same, unless he became the owner of any part of the interest sold to Smith, McKnight, or Patten, in which event nothing in the transfer should be construed as interfering with his right to manufacture and sell said medicine. In the same instrument M. A. Thedford transfers all his right, title, claim, and interest in and to the use of the present trade-mark and the firm name and style of M. A. Thedford & Co. to Z. C. Patten, W. J. Smith, and Charles McKnight, for the purpose of manufacturing, advertising, and selling said "Simmons Liver Medicine," the transfer carrying with it a proviso that in the use of the signature and firm name of M. A. Thedford & Co. he, Thedford, was to be in no way responsible, as it was simply to be used in the business of manufacturing, advertising, and selling "Dr. A. Q. Simmons' Liver Medicine" as a trade-mark. It also appears from the pleadings and evidence presented that complainant did not have the sole right to manufacture and sell Simmons' Liver Medicine. It seems that in September, 1868, a firm of the name of Zeilin & Co., of Philadelphia, acquired by purchase from a son of Dr. Simmons the right to manufacture, advertise, and sell a medicine known as "Dr. Simmons' Liver Medicine;" Dr. Simmons having transferred that right to his son in the same manner that he transferred the same right to his son-in-law, J. H. Thedford. The firm of M. A. Thedford & Co., composed of Smith, McKnight, and Patten, seemed to have been succeeded by a company called "Dr. A. Q. Simmons' Medicine Company." Against this company and others J. H. Zeilin & Co., in the year 1877, brought a bill in equity in the circuit court of the United States for the eastern district of Tennessee, seeking to enjoin said company from manufacturing, advertising, and selling said "Dr. A. Q. Simmons' Liver Medicine," and the result of that case was the granting of a permanent injunction, as prayed for. The present complainant is the successor, through Dr. A. Q. Simmons Medicine Company, to all the rights acquired by it from M. A. Thedford through Smith, McKnight, and Patten.

*J. T. Lupton* and *John L. Hopkins*, for complainant.

*N. J. & T. A. Hammond* and *C. P. Goree*, for respondents.

Before NEWMAN, District Judge.

NEWMAN, District Judge. After much reflection, I am satisfied that a proper determination of the question before the court in this case depends upon the construction to be given the contract of sale from Thedford to Patten and his associates. The evidence does not show that the medicine made by M. A. Thedford & Co., of Rome, is the same as to ingredients as that made by the Chattanooga Medicine Company, and there is such an entire dissimilarity in labels and wrappers used by the former company to those used by the latter, that it could hardly be held, if the case turned upon that alone, that there was any infringement of complainant's rights. The case seems really to turn upon the right of the Chattanooga Medicine Company to use the name of "M. A. Thed-

ford & Co." as they are now using the same in the manufacture, advertisement, and sale of what is called "M. A. Thedford & Co.'s Original and Only Genuine Liver Medicine or Black Draught." Indeed, the main contention of counsel for complainant is that M. A. Thedford is violating his contract in the use of his name in the connection with the medicine which he is preparing and offering for sale. Did Thedford, in his contract with Patten, bind himself so that he violates his agreement in the use of his own name in connection with what he calls "T. L. 1.?" The language of the contract, so far as material here, is as follows:

"I hereby transfer and convey to the said Z. C. Patten all and every of my rights, title, and interest whatsoever that I have been, and am now, or may hereafter become, possessed of in the right to manufacture, make, advertise, and sell the said 'Simmons Liver Medicine.' And I hereby bind myself not to engage in the business of manufacturing or selling the said medicine under any name or style, or to become interested in its manufacture through any other person whatsoever, except I should become the owner of any part or interest sold to Smith, McKnight, or Patten in the manufacture and sale of said medicine under the firm name style of M. A. Thedford & Co. Then nothing in this conveyance shall be construed to interfere with my right in manufacturing and sale of said medicine. It is also agreed and understood that all my right, title, claim, and interest in and to the use of the present trade-mark that I now own and possess, or have previously or may hereafter own and possess, and the firm name and the style of M. A. Thedford & Co. is hereby transferred to Z. C. Patten, W. G Smith, and Charles McKnight, for the purpose of manufacturing, advertising, and selling the 'Simmons Liver Medicine,' and they have the sole right to use said firm name in any manner they may see proper in the manufacturing, advertising, and selling the said A. Q. Simmons Liver Medicine, and to sell, lease, or transfer the same to their assigns or successors; and plates, electrotypes, and lithographing stones, and printed matter bearing the signature of M. A. Thedford & Co. are sold and conveyed to said Patten, Smith, and McKnight, for use aforesaid, of manufacturing, selling, &c., said 'Simmons Liver Medicine:' provided, however, that in the use of said signatures and firm name of M. A. Thedford & Co. I am in no way responsible, it being simply to be used as a trade-mark of the business, and, as such, the right to use it is transferred to the said Patten, Smith, and McKnight, and their successors."

It will be seen from the language used in the contract that the transfer and sale of the right to use the name of M. A. Thedford & Co. was confined to its use in connection with the manufacturing, advertising, and selling "Simmons' Liver Medicine," and with that alone. It seems to be perfectly plain from the words used that the parties intended by the contract to restrict the right to the use of the name of M. A. Thedford & Co., so that it should be used in order to hold the present business of Thedford to be in violation of his agreement; that the contract must be given a much broader signification than the above indicated. I am not prepared to hold, in view of the language of the parties, that Patten and his associates acquired more by this contract than the right to use Thedford's name in advertising and selling what is known as "Dr. Simmons' Liver Medicine." If the construction of this contract goes beyond that indicated, and if the intention of the parties, as derived from the contract, could be that Thedford agreed not to use his own name in the manu-

facture and sale of any liver medicine, it would be questionable, at least, if the contract would not be in restraint of trade, and therefore against public policy, and void. It is understood, of course, that the sale of the right to make, advertise, and sell a compound with secret ingredients would be valid, in no way violative of public policy; and that is what I understand that Thedford, by his contract, has done. Justifying in any way the contention of complainant as to the right to use the firm name of M. A. Thedford & Co., it is necessary to separate the proviso which concludes the quotation which I have made above from the contract from that which precedes it, and this I do not think can fairly be done. The language of this proviso is:

"Provided, however, that in the use of said signature said firm name of M. A. Thedford & Co. I am in no way responsible, but this is simply to be used as a trade-mark of the business, and, as such, the right to use it is transferred to the said Patten, Smith, and McKnight, and their successors."

Now, the right to use this firm name in the preceding part of the contract is for the purpose of "manufacturing, advertising, and selling 'Simmons' Liver Medicine.'" It can hardly be said by this proviso, which was intended to be restrictive in its effect, the parties intended to enlarge the right to use the name beyond that which has been before expressed. I think it may safely be said that the court will not, in contracts of this sort, in which a transfer is made of the rights to the use of a person's own name in a business enterprise, extend or enlarge the operation of the same beyond its necessary import. In the case of Zeilin & Co. against Dr. A. Q. Simmons' Liver Medicine Company and others, (said company having succeeded the firm to which M. A. Thedford had made the sale,) to which suit McKnight and Patten were parties defendant, a decree was entered by which the defendants were enjoined "from making, selling, or offering for sale any medicine under the title of 'Dr. A. Q. Simmons' Liver Medicine,' or 'Dr. Simmons' Liver Regulator or Medicine,' and from using the name or word of 'Simmons,' or the *fac simile* signature of A. Q. Simmons, in any way upon any bottles or packages of liver medicine or of medicine made, advertised, and sold for the liver." After this decree of court it became necessary to abandon the wrappers and the use of Dr. Simmons' name entirely. Then it was, or soon thereafter, that the name and wrapper now used by the Chattanooga Medicine Company was adopted.

The claim of the complainant here, so far as its claim is based on the contract, that the decree in the Zeilin suit left them the right to the preparation itself, and to the name of M. A. Thedford & Co., and to the picture of an old man, which picture, as I understand it, they claim they may use, provided that Dr. Simmons' name is not anywhere used in connection with the picture. The difficulty about complainant's contention is that Thedford transferred the right to use his name in advertising and selling "Dr. Simmons' Liver Medicine," and the complainant is using it to advertise and sell M. A. Thedford's Liver Medicine, which appears to me to be a use of his name not contemplated when the contract was made, or covered by its terms. Much has been said

in the argument of this case about what is claimed to be the effort of the M. A. Thedford Medicine Company, of Rome, to convey to the public by their wrappers and advertisements, and to impress upon all readers of their literature, the idea that the medicine they are selling is the same as the original Simmons' Liver Medicine. There is some force in this argument, but since the decree in the Zeilin suit complainant has no right to make what is known as "Dr. Simmons' Liver Medicine," and in the face of this decree, by which it is adjudged that it has no right to the name of Dr. Simmons, this court cannot, at their instance, prevent other persons from using the same. In other words, so far as the name of Dr. Simmons is concerned in connection with liver medicine since the decree alluded to, it is declared that it has no right and no standing in court to assert the right to use the same.

It is further said that complainant has in its labels resorted to fraudulent devices, and one calculated to deceive the public, in that it holds out to the world that the medicine it is making was discovered by M. A. Thedford, 1840, and that the arrangement of its wrappers is such as to lead the public to believe that the picture of an old man thereon is the picture of M. A. Thedford; and in fact it says that Thedford is comparatively a young man, and that it does not itself, therefore, come into a court of equity with clean hands, and should not be allowed any relief for that reason. Complainant, on the other hand, says that defendants' conduct, especially in the matter of attempting to advertise and sell under the name of J. H. Thedford & Son, Dr. Simmons' Liver Medicine, and the conversation to which it testified, shows that M. A. Thedford has been acting in bad faith, and seeking to avoid the effect of a contract honestly entered into, and to deprive the others to whom he sold, and their successors, of their distinct rights under the contract. I think it wholly unnecessary to discuss either of these contentions, in view of my opinion as to the construction of the contract, which is really the basis of the whole matter. I conclude therefore:

*First.* That Thedford only parted with the right to use his name in connection with Dr. Simmons' Liver Medicine.

*Secondly.* By reason of the decree in the Zeilin suit complainant has no right to advertise or sell Dr. Simmons' Liver Medicine.

*Third.* That complainant has no right to use Thedford's name in connection with liver medicine otherwise than I have stated; and Thedford may use the same as he is now doing without infringing any of its rights.

*Fourth.* I have stated that, as to any infringement of trade-mark, considered independently of contract rights, I do not think there is such a similarity as to justify interference by the court with the defendant.

The conclusion is that injunction must be denied.